IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIE ANNE K., | ) |
|     Plaintiff, | ) ) ) |
|     v. | )   No. 18 C 8533 ) |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | )   Magistrate Judge Finnegan ) ) |
|     Defendant. | ) ) |

## ORDER

Plaintiff Julie Anne K. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' briefs, the Court agrees with Plaintiff that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff applied for DIB and SSI on February 24, 2015, alleging in both applications that she became disabled on August 1, 2010 due to depression, post-traumatic stress disorder ("PTSD"), manic psychosis, mania, anxiety, and sexual assault. (R. 198-210, 258). Born in 1980, Plaintiff was 35 years old at the time of her applications, making her a younger person. (R. 198); 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c). She lives

with her parents and has a bachelor of science degree in environmental science and a teaching certificate in general science. (R. 34-35, 611). Plaintiff worked as a substitute teacher for many years dating back to September 2002. Though she continued to do some substitute teaching after the August 1, 2010 alleged disability onset date, it did not rise to the level of substantial gainful activity. (R. 37, 259).

The Social Security Administration denied Plaintiff's applications initially on July 23, 2015, and again upon reconsideration on February 4, 2016. (R. 55-103). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Janice M. Bruning (the "ALJ") on June 15, 2017. (R. 31). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Gary Wilhelm (the "VE"). (R. 33-54). On October 17, 2017, the ALJ found that Plaintiff's affective disorder (depression), mood disorder, schizoaffective disorder, bipolar disorder, and PTSD are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-20). After reviewing the evidence, the ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work, with the following nonexertional limitations: she can understand, remember, and carry out no more than simple routine tasks; she is limited to performing the same tasks day in and day out with no public contact and no more than occasional contact with coworkers and supervisors; she cannot handle strict quotas or engage in work where she is "being checked up on during the workday to see if she is on pace with a goal/quota or with other employees," but she can do work where performance is measured by what is completed at the end of the workday; and she cannot be placed in

"teamwork situations" requiring her to work with others to complete tasks, but she can work independently. (R. 20-24).

The VE testified that a person with this RFC and Plaintiff's background would be able to perform a significant number of jobs available in the national economy, including linen room attendant, laundry sorter, or counter supply worker. The ALJ accepted this testimony and concluded that Plaintiff has not been disabled at any time from the August 1, 2010 alleged disability onset date through the date of the decision. (R. 24-25). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. §§ 405(g) and 1383(c)(3). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in evaluating her statements regarding the limiting effects of her symptoms; (2) improperly disregarded statements from Plaintiff's parents; and (3) erred in weighing the opinion evidence of record. For the reasons discussed below, this Court agrees with Plaintiff that the case must be remanded for further consideration of the opinion of her treating psychiatrist, Patricia Roy, M.D.

## DISCUSSION

**A.    Standard of Review**

Judicial review of the Commissioner's final decision is authorized by the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor

may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.    Five-Step Inquiry**

To recover DIB or SSI, a claimant must establish that she is disabled within the meaning of the Social Security Act.[1] *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or

---

[1]    Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

4

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.    Analysis**

    **1.    Dr. Roy's Opinion**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in giving little weight to the opinion from Plaintiff's treating psychiatrist Dr. Patricia Roy. A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602

F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); *see Simila*, 573 F.3d at 515.

      Dr. Roy completed a Psychiatric Report of Plaintiff on April 9, 2015 at the request of the Disability Determination Services ("DDS"). Dr. Roy started treating Plaintiff in September 2014, shortly after she was hospitalized for nearly two weeks for "escalating depression and psychotic symptoms," including staring off into space and urinating on herself. (R. 500, 538, 604). Plaintiff was hospitalized a second time in January 2015 with "multiple behavioral abnormalities," such as catatonic behavior, vague hallucinations, and thoughts of suicide. (R. 396, 406, 604). In her April 2015 opinion, Dr. Roy diagnosed Plaintiff with major depression, severe, with psychosis; and generalized anxiety disorder. (R. 604). Plaintiff's symptoms included depression, anxiety, paranoia, catatonia, odd beliefs, and delusions. (*Id.*). With respect to Plaintiff's mental status, Dr. Roy indicated that her mood and affect were depressed, constricted, and tearful, and she exhibited slow thought blocking. She was also influenced by others, distracted, and poorly organized with auditory hallucinations, phobias, and ideas of reference. (R. 605). Dr. Roy opined that Plaintiff still appeared somewhat confused despite taking Seroquel and Wellbutrin, and struggled with limited concentration and distraction. (R. 606). As for Plaintiff's ability

to perform tasks on a sustained basis without undue interruptions or distractions, Dr. Roy stated it would depend on Plaintiff's functioning that day: "Some days she can perform tasks, other days she appears confused." (R. 607).

In assigning this opinion little weight, the ALJ noted that Dr. Roy did not explain how Plaintiff "can travel out of state, go to work as a substitute teacher, attend Zen classes, and learn to teach Zen classes." (R. 23). It is not clear, however, why these activities undermine Dr. Roy's assessment, and the ALJ failed to provide any explanation in that regard. Notably, Plaintiff had attended a Zen meditation retreat just before her second hospitalization on January 5, 2015. Plaintiff's father found her outside in subzero temperatures without proper clothing after she attempted to go for a run. (R. 406, 562). She exhibited catatonic behavior and had vague hallucinations about voices and echoes in her environment, as well as thoughts of suicide. (R. 406, 563). Plaintiff reported that she had stopped taking her medication while at the retreat to "see what happened." (R. 563-64). On exam, Plaintiff was disheveled, fearful, anxious, restricted, and severely dysphoric. She exhibited motor activity shaking, selective mutism, and negativism. Her judgment and insight were both impaired and she expressed "assaultive ideas toward animals." (R. 564). Plaintiff remained in the hospital until January 14, 2015 when she was discharged to a residential crisis center with a diagnosis of bipolar disorder, manic episode, with psychotic features. (R. 454-55).

After Plaintiff completed treatment at the residential crisis center on February 11, 2015, she went to visit her sister in California. (R. 580, 583). She also substitute taught a few half days, which went well, worked for an after school program over the summer, and continued to attend the Zen Center, which gave rise to a paid speaking engagement

7

about meditation practices. (R. 593, 628, 630, 632, 645). In July 2015 Plaintiff participated in a 4-day job training program and told Dr. Roy that she planned to teach during the regular school year. (R. 646). At her next visit with Dr. Roy on August 31, 2015, Plaintiff reported that she had taken a trip to the Black Hills to participate in a Native American ceremony and was doing pretty well, but she had also stopped taking Wellbutrin and Seroquel. (R. 647). On November 20, 2015, Plaintiff was substitute teaching and felt comfortable in the job. (R. 661). But, she was still not taking Wellbutrin, believing she did not need it anymore, and she refused further medication. (*Id.*). On December 12, 2015, Plaintiff ended up back in the hospital for 5 days following another psychotic episode. (R. 650).

The ALJ did not articulate how Plaintiff's limited ability to travel, substitute teach, and go to the Zen Center undermine Dr. Roy's opinion that she nonetheless remains incapable of fulltime work. The records show that Plaintiff has a history of psychotic breaks followed by periods of improvement, then medication noncompliance leading to another psychotic break. This cycle is common in individuals suffering from bipolar disorder, as one symptom of the illness is an inability to appreciate the importance of the medication. *See Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently."); *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010) ("[O]ne of the most serious problems in the treatment of mental illness [is] the difficulty of keeping patients on their medications."). The ALJ noted that Plaintiff was "noncompliant at times with her medication regimen" (R. 22), and "sometimes takes breaks from it" (R. 23), but she did

not explain how – or even whether – this factored into her assessment of Dr. Roy's opinion regarding Plaintiff's functioning.

The ALJ also discounted Dr. Roy's opinion because she failed to cite specific record evidence demonstrating that Plaintiff had good and bad days. (R. 23). To begin, the DDS form does not ask for such record citations so it is not clear how this justifies rejecting Dr. Roy's opinion. Moreover, the treatment notes arguably show the fluctuating nature of Plaintiff's condition and the ALJ does not claim otherwise. Following her first hospitalization in August-September 2014, Plaintiff had regular appointments with Dr. Roy and a therapist, Sonya Kontorovich, LCPC. On September 17, 2014, Plaintiff was "somewhat incoherent" and needed her mother to provide much of the relevant information. Ms. Kontorovich believed Plaintiff required "a higher level of care than weekly therapy sessions" but Plaintiff refused. (R. 537). Throughout the rest of 2014, Plaintiff showed good progress at some exams but routinely presented with symptoms of anxiety and depression, with difficulty making decisions and communicating. (R. 538, 539, 542-43, 545, 547, 549, 551, 554, 556-57, 559). By January 2015, Plaintiff was back in the hospital due to a psychotic episode. (R. 396).

When Plaintiff was released from the residential crisis center in February 2015, her psychiatrist and therapist once again reported good progress at several sessions while noting Plaintiff still exhibited a depressed and anxious mood. (R. 581, 583, 586, 588-89). In March 2015, Plaintiff was gaining insight into how to achieve confidence and overall satisfaction in life (R. 586), but in June 2015 she admitted that she had not been adhering to a structure, causing destabilization. (R. 640). Dr. Roy stated that Plaintiff presented with "some superstitions" on July 31, 2015 and reported feeling "out of it" the previous

9

week. (R. 646). Nevertheless, Plaintiff was alert and oriented with linear thought process, and her condition remained essentially stable through November 2015 even though she was refusing medication. (R. 646-47, 661). As noted, however, Plaintiff was hospitalized again on December 12, 2015 following another psychotic episode. (R. 650).

Bipolar disorder is "by nature episodic and admits to regular fluctuations even under proper treatment." *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011). The ALJ failed to explain why Dr. Roy's observation that Plaintiff's symptoms follow this pattern was inaccurate, or point to evidence contradicting that assessment. *See Punzio*, 630 F.3d at 712 (ALJ erred in discounting treating psychiatrist's opinion that was consistent with her own treatment notes and medical records from other treating sources). Notably, Plaintiff's condition continued to fluctuate even after Plaintiff stopped seeing Dr. Roy in late 2015 and started treating with psychiatrist Srinivas Ravanam, M.D. On February 9, 2016, Plaintiff was anxious, disheveled, defensive, and guarded with disorganized speech and delusions. (R. 732). Dr. Ravanam documented poor attention span, poor impulse control, and poor emotional regulation. (R. 732-33). On February 19, 2016, Dr. Ravanam described Plaintiff as disengaged and withdrawn, noting she exhibited a high level of anxiety and depression. Plaintiff was also "dissociative and non-responsive" during the exam. (R. 735). Plaintiff's difficulties with anxiety and mood instability persisted through April 22, 2016, (R. 670, 674, 738, 676-77, 741), at which point Plaintiff told Dr. Ravanam that she wanted to "discontinue a medication" and did not want refills. (R. 713). Dr. Ravanam prescribed Wellbutrin and Zyprexa in any event (R. 715), but Plaintiff's anxiety was worse in May and June 2016, and in July 2016 she "self discontinued" Zyprexa due

to side-effects. (R. 749-50, 752-53, 756). On August 2, 2016, Plaintiff told her therapist she was going back to work and wanted to discontinue her sessions. (R. 685).

By January 2017, Plaintiff was doing worse again. (R. 731). In February 2017, Dr. Ravanam noted that Plaintiff had started drinking to excess by herself to improve her mood, though it was having the opposite effect. (R. 761). The following month, on March 2, 2017, Plaintiff reported that she had suffered a panic attack and had to call 911. She was feeling more down and frustrated/irritated, with less motivation and concentration. (R. 780-81). On March 13, 2017, Plaintiff told Dr. Ravanam that she was struggling with nightmares and he assessed her condition as "worse." (R. 767). In April 2017, however, Plaintiff was once again doing better and trying to socialize with friends. (R. 773, 785).

The ALJ did not adequately discuss these records, focusing instead on Plaintiff's ability to testify appropriately at the hearing, follow a recipe, drive, use a cellphone, email, text, substitute teach part-time, and do some traveling. (R. 18-20). Yet a claimant may have severe limitations despite being able to behave "pretty normally" during office visits, *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006), and an "ability to struggle through the activities of daily living does not mean that [a claimant] can manage the requirements of a modern workplace." *Punzio*, 630 F.3d at 712. As the Seventh Circuit has explained, a person cannot hold down a full-time job if "half the time she is well enough that she could work, and half the time she is not." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). Viewing the record as a whole, the ALJ failed to build a logical bridge between the evidence and her conclusion that Dr. Roy's opinion was entitled to little weight. The case must be remanded for further consideration of this issue, including a discussion of

11

the episodic nature of Plaintiff's bipolar disorder, the impact of her problems with medication compliance, and her ability to function in a work setting on a sustained basis.

### 2. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments but the ALJ should take the opportunity on remand to reassess all of the medical and testimonial evidence of record in determining Plaintiff's RFC, and consult with a VE as appropriate regarding the availability of jobs Plaintiff is capable of performing.

### CONCLUSION

For reasons stated above, Plaintiff's request to reverse the decision of the Commissioner of Social Security is granted and the Commissioner's Motion for Summary Judgment [32] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: May 18, 2020

SHEILA FINNEGAN
United States Magistrate Judge